IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MICHAEL W. CAHOON, ) | |
| ) | |
| Plaintiff, ) | NO. 3:21-cv-0235 |
| ) | |
| v. ) | JUDGE RICHARDSON |
| ) | |
| PREMISE HEALTH HOLDING ) | |
| CORPORATION, aka PREMISE ) | |
| HEALTH, ) | |
| | |
| Defendant. | |

### MEMORANDUM OPINION

Pending before the Court is "Defendant Premise Health Holding Corporation a/k/a Premise Health's Rule 12(b)(6) Motion to Dismiss" (Doc. No. 8, "Motion"). Plaintiff has responded. (Doc. No. 11, "Response"). Defendant replied to Plaintiff's Response. (Doc. No. 14, "Reply"). The matter is ripe for review.

For the reasons discussed below, the Court will deny Defendant's Motion.

### BACKGROUND[1]

Plaintiff, a resident of Jonesboro, Arkansas, is a commercial pilot formerly employed by Piedmont Airlines. (Doc. No. 1 at ¶ 1). Piedmont Airlines requires its employees to submit to unannounced alcohol testing.[2] (*Id.*) Premises Health is a for-profit corporation whose principal office is in Brentwood, Tennessee. (*Id.* at ¶ 2). It administers drug and alcohol surveillance testing.

---

[1] The facts in this section are taken from Plaintiff's Complaint (Doc. No. 1) and are accepted as true for purposes of the Motion. To the extent that allegations referred to below are legal conclusions, however, they are not accepted as true but rather are identified as merely what Plaintiff claims, and not what the Court is accepting as true for purposes of the Motion.

[2] This is also a requirement of the Federal Aviation Administration. (Doc. No. 1 at ¶ 1).

1

(*Id*. at ¶ 4). Piedmont Airlines required Plaintiff to submit to an alcohol test, which was administered by Defendant. (*Id*. at ¶ 7). Plaintiff alleges that Premises Health breached its duty of care by negligently performing a blood-spot test on him on or about March 19, 2020. (*Id*. at ¶¶ 2, 6). The test involves the collection of blood spots from the donor so that they can be tested for the presence of phosphatidlethanol. (*Id.* at ¶ 7). Plaintiff contends that the Premise Health employee that administered his test required him to use an ethanol-based alcohol pad in violation of the United States Drug Testing Laboratories' ("USDTL") rules.[3] (*Id*. at ¶¶ 8-9, 13). As a result, Plaintiff's results came back a week later with a false-positive report of alcohol consumption. (*Id*. at ¶¶ 9-10). Plaintiff had two other tests conducted, one before and one after the March 19 blood-spot collection, that were both returned as negative for alcohol consumption.[4] (*Id*. at ¶ 10).

Plaintiff filed his Complaint on March 18, 2021. (Doc. No. 1). In one of its captions, the Complaint suggests that it asserts a single "Cause of Action." It might be more precise to say that the Complaint sets forth two different causes of action, though both are grounded in negligence. One theory is that Defendant is directly liable in negligence because it (allegedly) breached its duty of care to Plaintiff by failing to properly train and supervise its employee that collected Plaintiff's blood spot on March 19. (*Id*. at ¶¶ 12-13). Under the second theory, Defendant is vicariously liable for the "negligent and wrongful" acts of its employee. (*Id.* at ¶ 14). According to Plaintiff, the alleged negligence triggered the revocation of his medical certificate, so that he could no longer fly a commercial aircraft; this in turn entailed the loss of the ability to work in his chosen profession and provide for his family and resulted in damages including the loss of past

---

[3] For a dried blood-spot collection, USDTL requires that the collector and donor wash their hands with soap and water and cautions not to use an ethanol-based sanitizer. (Doc. No. 1 at ¶ 8).

[4] Within 30 days of the March 19 blood spot collection Plaintiff also took hair and nail ethyl glucuronide tests, which both came back negative. (Doc. No. 1 at ¶ 11).

and future income and other economic losses and anguish and loss of self-esteem. (*Id*. at ¶ 15, prayer for relief).

## LEGAL STANDARD

Because this is a diversity action, Tennessee substantive law applies. *Truth v. Eskioglu*, 781 F.Supp.2d 630, 631 (M.D. Tenn. 2011) (citing *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009); *Southwell v. Summit View of Farragut LLC*, No. 3:10-cv-550, 2011 WL 2749614 at *3 (E.D. Tenn. 2011). In Tennessee, malpractice actions are governed by the Tennessee Health Care Liability Act ("THCLA"), formerly known as the Tennessee Medical Malpractice Act.[5] *Truth*, 781 F.Supp.2d at 631 (citing *Miller v. Monroe Cnty.*, No. 3:09–cv–85, 2010 WL 1427298 at *4 (E.D. Tenn. 2010) (holding that the THCLA's requirements apply in federal diversity actions and collecting relevant cases)).

Under the THCLA, a "'[h]ealth care liability action' means any civil action . . . alleging that a health care provider or providers have caused an injury related to the provision of, or failure to provide, health care services to a person, regardless of the theory of liability on which the action is based[.]" Tenn. Code Ann. § 29-26-101(a)(1). "Health care services" include care by health care providers, which includes care by physicians, nurses, licensed practical nurses, pharmacists, pharmacy interns or pharmacy technicians under the supervision of a pharmacist, orderlies, certified nursing assistants, advance practice nurses, physician assistants, nursing technicians and

---

[5] This statute was amended in 2012 to refer to "health care liability" instead of "medical malpractice," a narrower concept. Much of the case law references the THCLA by its former name and frames discussion of the statute in terms of "medical malpractice." *Wade v. Jackson-Madison Cty. Gen. Hosp. Dist.*, 469 S.W.3d 54, 59 n. 3 (Tenn. Ct. App. 2015).

3

other agents, employees and representatives of the provider, and also includes staffing, custodial or basic care, positioning, hydration and similar patient services. Tenn. Code Ann. § 29-26-101(b).

The THCLA requires that "[a]ny person, or that person's authorized agent, asserting a potential claim for health care liability shall give written notice of the potential claim to each health care provider that will be a named defendant at least sixty (60) days before the filing of a complaint based upon health care liability." Tenn. Code Ann. § 29-26-121(a)(1). The THCLA further requires that a certificate of good faith must be filed in any health care liability action in which expert testimony is required (under Tenn. Code Ann. § 29-26-115). Tenn. Code Ann. § 29-26-122(a).

> As this Court previously has noted:
>
> A motion to dismiss for failure to state a claim is the proper method for challenging whether a plaintiff has complied with the [THCLA] pre-suit notice requirement. *Ellithorpe v. Weismark*, 479 S.W.3d 818, 823 (Tenn. 2015). The Tennessee Supreme Court has interpreted this notice requirement as mandatory, not directory. *Runions v. Jackson–Madison County General Hospital Dist.*, 2017 WL 514583 at *5 (Tenn. Ct. App. Feb. 7, 2017) (citing *Myers v. AMISUB (SFH), Inc.,* 382 S.W.3d 300, 308-09 (Tenn. 2012)). The proper sanction for noncompliance with this statute is dismissal without prejudice. *Foster v. Chiles*, 467 S.W.3d 911, 916 (Tenn. 2015).

*Mullin v. Rolling Hills Hospital*, No. 3:16-cv-2609, 2017 WL 2953357 at *2 (M.D. Tenn. 2017).[6] Notably, the "statute" for which the proper sanction for noncompliance is dismissal without prejudice is not the THCLA in its entirety, but rather only Tenn. Code Ann. § 29-26-121(a)(1), which sets forth only the pre-suit notice requirement. *See Foster*, 467 S.W.3d at 916.

For purposes of a motion to dismiss, the Court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that

---

[6] Dismissal without prejudice is not necessarily the general norm in the case of dismissal for failure to state a claim pursuant to Rule 12(b)(6), but the Court accepts that it is appropriate in this particular context.

4

is plausible on its face. *Id*. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. at 679. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id*.; *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010), *cited in Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018). Moreover, factual allegations that are merely *consistent* with the defendant's liability do not satisfy the claimant's burden, as mere consistency does not establish *plausibility* of entitlement to relief even if it supports the *possibility* of relief. *Iqbal*, 556 U.S. at 678.

In determining whether a complaint is sufficient under the standards of *Iqbal* and its predecessor and complementary case, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), it may be appropriate to "begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. This can be crucial, as no such allegations count toward the plaintiff's goal of reaching plausibility of relief. To reiterate, such allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bold" allegations. *Id*. at 681. The question is whether the remaining allegations – factual allegations, *i.e.*, allegations of factual matter – plausibly suggest an entitlement to relief. *Id*. If not, the pleading fails to meet the standard of Federal Rule of Civil Procedure 8 ("Rule 8") and thus must be dismissed pursuant to Rule 12(b)(6). *Id*. at 683.

As a general rule, matters outside the pleadings may not be considered in ruling on a motion to dismiss under Rule 12(b)(6) unless the motion is converted to one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). When a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment. *Doe v. Ohio State Univ.,* 219 F.Supp.3d 645, 652-53 (S.D. Ohio 2016); *Blanch v. Trans Union, LLC*, 333 F. Supp. 3d 789, 791-92 (M.D. Tenn. 2018).

On a Rule 12(b)(6) motion to dismiss, "[t]he moving party has the burden of proving that no claim exists." *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross and Blue Shield,* 552 F.3d 430, 433 (6th Cir.2008). That is not to say that the movant has some *evidentiary* burden; as should be clear from the discussion above, evidence (as opposed to *allegations* as construed in light of any allowable matters outside the pleadings) is not involved on a Rule 12(b)(6) motion. The movant's burden, rather, is a burden of *explanation*; since the movant is the one seeking dismissal, it is the one that bears the burden of explaining—with whatever degree of specificity and thoroughness is required under the circumstances—why dismissal is appropriate for failure to state a claim.

## DISCUSSION

Via the motion, Defendant requests dismissal of Plaintiff's Complaint pursuant to Rule 12(b)(6), but not on the most general and typical grounds (as contemplated by *Iqbal* and *Twombly*) that the Complaint fails to contain factual allegations plausibly suggesting entitlement to relief on the stated claims. Instead, Defendant makes the more case-specific arguments that Plaintiff's pre-suit notice letter, and the timing of the filing of his Complaint, failed to meet the requirements of

6

the THCLA.[7] (Doc. No. 8 at 1-2). Specifically, Defendant asserts that, in violation of the THCLA, Plaintiff failed (1) to wait at least sixty days after sending his pre-suit notice letter to file his Complaint, (2) to submit a certificate of good faith with his Complaint, and (3) to file his Complaint within the applicable limitations period.[8] *Id*.

If the Complaint is indeed subject to the THCLA, Defendant has a point with respect to his first two assertions above. Plaintiff did send a pre-suit letter to Defendant, but did so far less (*i.e.*, much later) than sixty days prior to filing this action. And Plaintiff did not file a certificate of good faith.

---

[7] Defendant contends that this case should be dismissed *with* prejudice because the Complaint was filed beyond the one-year limitations period. (Doc. No. 8 at 2 n. 1). The Court accepts that dismissal for this reason would be different from dismissal for non-compliance with the THCLA's pre-suit notice requirement, for which dismissal only *without* prejudice is the appropriate disposition. (as noted above). However, as discussed below, the Complaint is not barred by limitations, and so Defendant's contention is moot in any event.

[8] The undersigned will highlight a few important points regarding the terminology used herein, by reference to something he wrote years ago:

> On the subject of limitations, courts often use language loosely, interchanging various terms for one another. For maximum clarity, terms must be defined so that important concepts are distinguishable from one another, then used consistently in accordance with those definitions. . . .
>
> As used herein, a "statute of limitations" refers to a legislative enactment, or codification thereof, that sets forth a limitations period. . . . A "limitations period" refers to the length of time-the specific number of days, months, or years-in which a given claim can be commenced, as set forth in a statute of limitations. "Limitations" [refers] to the legal doctrine whereby a plaintiff is barred from bringing a claim based upon the lapse of the applicable limitations period. To say that limitations "applies" is to say that, under limitations law, a claim is time-barred.

Eli J. Richardson, *Eliminating the Limitations of Limitations Law*, 29 Ariz. St. L.J. 1015, 1017–19 (1997). When speaking in its own voice, the Court will use these terms accordingly, even if the cases it cites do not always do likewise.

7

Plaintiff asserts in his Response that his Complaint does not allege an injury related to the provision of health care services by a health care provider and therefore is not subject to the provisions of the THCLA. (Doc. 11 at 2). Plaintiff also asserts that, even though the claims in his Complaint are not health care liability claims, he "timely and prudently" sent pre-suit notice within the one-year limitations period applicable to health care liability claims.[9] *Id*. at 3.

In assessing a Rule 12(b)(6) motion to dismiss, the Court can consider only the allegations within the four corners of the Complaint, plus (to the extent applicable) a few different additional categories of information. *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (concluding that "[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein."). Plaintiff did not attach any documents to his Complaint. Defendant did cite to several exhibits in its memorandum of law in support of its Motion, but the Court cannot consider them in assessing the Motion.[10] *See*

---

[9] As set forth below, Plaintiff concedes that a (relatively stingy) one-year limitations period is indeed applicable. But he contends, appropriately, that the limitations period is provided by the statute of limitations dealing with common law negligence claims (Tenn. Code Ann. § 28-3-104) rather than the statute of limitations dealing with health care liability claims (Tenn. Code Ann. § 29-26-116(a)). Plaintiff admits to at least having an eye on the latter statute of limitations, to the point of having made sure to have complied with it; he claims, however, that he did this not because he thought his *current* claim was a health care liability claim, but rather in an effort to keep open the possibility of filing a future health care liability claim within its applicable limitations period (as extended by 120 days beyond March 19, 2021 under Tenn. Code. Ann. § 29-26-121(c) based on his sending the pre-suit notice on March 18, 2021). (Doc. No. 11 at 3). The Court need not address at this time whether Plaintiff's efforts in this regard were successful.

[10] For example, Exhibit A of Defendant's Motion is the pre-suit notice letter Plaintiff sent to Defendant. However relevant the letter may be, it is an extraneous document and the Court cannot consider it in its assessment of Defendant's Motion. And even if the Court could consider it, the purpose for which it would be considered—*i.e.*, to show non-compliance with the THCLA—is simply inapplicable given the Court's conclusion that the THCLA is inapplicable.

Doc. No. 8-1; *Mullin*, 2017 WL 1953357 at *2 (noting that in his report and recommendation, the magistrate judge declined to consider extraneous documents filed by Defendant in assessing a motion to dismiss).[11]

Looking at the face of the Complaint alone, Plaintiff's claims are based on straightforward allegations that: (1) an employee of Defendant negligently collected a blood spot from him, resulting in a false positive test for alcohol consumption, and that Defendant is vicariously liable for its employee's negligence; and (2) Defendant negligently trained and supervised its employee with respect to collecting blood spots. (Doc. No. 1 at ¶¶ 13-14). These appear to be claims sounding more in negligence than in medical malpractice.

This conclusion is supported by *Gunter v. Lab. Corp. of Am.*, 121 S.W.3d 636 (Tenn. 2003). There, the plaintiff brought a negligence action against a testing laboratory alleging that the laboratory negligently performed a DNA test and overstated the probability of paternity. *Id*. at 638. The defendant contended that the one-year limitations period applicable to medical malpractice claims or personal injury claims applied and had run prior to the filing of the complaint, and on that basis it moved to dismiss the complaint for failure to state a claim. *Id*. The Tennessee Supreme Court concluded that an action involving the adequacy of DNA blood testing procedures in a laboratory sounds in negligence rather than medical malpractice. *Id*. at 637, 640 (internal citations omitted) (noting that "[i]n distinguishing between the two claims [of medical malpractice and ordinary negligence], it should be noted that not all cases involving health or medical entities sound in medical malpractice. . . . When a plaintiff's claim is for injuries resulting from negligent medical

---

[11] To the extent that a case like *Southwell v. Summit View of Farragut LLC*, No. 3:10-cv-550, 2011 WL 2749614 at *4 (E.D. Tenn. 2011), indicates that something may be considered merely because it was "included" in the "record," irrespective of whether it actually meets the specific criteria for being considered on a Rule 12(b)(6) motion, the Court must disagree.

9

treatment, the claim sounds in medical malpractice. When a plaintiff's claim for injuries resulting from negligent acts that did not affect the medical treatment of a patient, the claim sounds in ordinary negligence.").

Plaintiff's complaint likewise alleges that the blood-spot collection was conducted negligently and resulted in a false positive. (Doc. No. 1 at 3). This situation is not like *Mullin*, where the defendant's rendering of mental health care services to the plaintiff amounted to the provision of health care services. *Mullin*, 2017 WL 1953357 at *2 (noting that "[p]laintiffs' claims . . . are all related to the provision of health care services and are governed by [the THCLA]."). In the instant case, nothing in the Complaint suggests a provision of health care services, as defined by the THCLA, by the Defendant. Instead, the Complaint simply alleges negligent alcohol-testing procedures by Defendant's employee. (Doc. No. 1 at 4). *Gunter* strongly suggests that an action based solely on this kind of allegedly negligent testing procedure is not a health care liability action:

> The crucial question here, then, is whether the services performed by LabCorp for Gunter bear a substantial relationship to the rendition of medical treatment. Of course, there may be circumstances where the analysis of a person's blood could be substantially related to the rendition of medical treatment. But when that analysis is performed to obtain a DNA profile for purposes of paternity determination, no rendition of medical treatment is involved. *See, e.g., Smith v. Katzman*, 81 Ohio App.3d 682, 611 N.E.2d 1013, 1014 (1992) (recognizing precedent that "negligent blood-grouping analysis [done for a paternity suit] is not a claim that arises out of the medical diagnoses, care or treatment of any person"). Thus, the core issue in this case—the adequacy of the laboratory's blood testing procedures—does not implicate issues of medical competence or judgment linked to Gunter's treatment. Accordingly, we hold that the medical malpractice statute and its concomitant one-year limitation of actions have no application to Gunter's claim.

121 S.W.3d at 641

As with the performance of the testing procedures involved in *Gunter*, Defendant's performance here of blood-spot collection, for purposes of an alcohol-consumption test, involves no rendition of medical treatment.

Accordingly, in the instant matter, Plaintiff's claim is not a health care liability claim and is therefore not subject to the provisions of the THCLA. Thus, Plaintiff was not required to comply with the THCLA's pre-suit notification requirement or the THCLA's requirement that a certificate of good faith be filed with the complaint.

Defendant's limitations argument is likewise without merit. Defendant asserts that a one-year limitations period is applicable, and Defendant implies that such period began running as of the date of collection of Plaintiff's blood spot (March 19, 2020). Consequently, Defendant claims, Plaintiff's limitations period "expired on March 19, 2021." The Court takes issue with none of this.[12] Instead, the Court takes issue with Defendant's assertion that Plaintiff's Complaint was filed on March *29,* 2021. (Doc. No. 8 at 1; Doc. No. 8-1 at 2). To the contrary, and as Plaintiff notes, (Doc. No. 11 at 4 n.2), the docket reflects that the Complaint was filed on March 18, 2021. This is a rather consequential misstatement by Defendant, the kind that should be avoided in the future by counsel double- and even triple-checking such things. The filing of the complaint stopped the running of the limitations period (irrespective of the fact that the complaint was *served* at a later date). *Burley v. Quiroga*, No. 16-CV-10712, 2019 WL 4316499, at *13 (E.D. Mich. June 6, 2019) ("[T]he filing of a complaint against a party stops the running of the statute of limitations as to the claim against that party. . ." (quoting *Ringrose v. Engelberg Huller Co., Inc.*, 692 F.2d 403, 405

---

[12] Nor, for that matter, does Plaintiff. Not shying away from the consequences of a notably short limitations period, Plaintiff even concedes that a one-year limitations period indeed is applicable—albeit pursuant to the statute of limitations governing common-law negligence claims rather than the statute of limitations governing health care liability claims. (Doc. No. 11 at 8).

11

(6th Cir. 1982)), *report and recommendation adopted,* No. 16-CV-10712, 2019 WL 3334810 (E.D. Mich. July 25, 2019; *Williams v. E.I. duPont de Nemours Co.*, 581 F. Supp. 791, 793 (M.D. Tenn. 1983) (quoting *Ringrose*, 692 F.2d at 405). Thus, as the Complaint was filed prior to the expiration of the one-year limitations period, limitations does not apply to bar Plaintiff's claims.

Having misfired on its arguments that dismissal is warranted based on failure to comply with the requirements of the THCLA and the applicable one-year limitations period, Defendant is left with no arrows in its quiver. In particular, Defendant is left without the classic (and most general) argument on a Rule 12(b)(6) motion, *i.e.*, that the Complaint fails to set forth factual matter plausibly suggesting the existence of each and every element of his claim. This is because, as Plaintiff notes, Defendant does not make this argument. *Id*. at 12.

## **CONCLUSION**

Because all of Defendant's particular arguments for dismissal of the Complaint are without merit, the Motion must and will be denied. [13]

An appropriate order will be entered.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

---

[13] While there are several other issues that are raised in the Motion, Response, and Reply, the Court need not address those issues because the Motion fails on the simple basis that it does not meet the requirements of Rule 12(b)(6).